IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DISABILITY RIGHTS WISCONSIN, INC.

        Plaintiff,

    v.

MELISSA BLOM, Manager, Children, Youth and
Families Division Outagamie County Department of
Health and Human Services, in her official and
individual capacities;

ROSEMARY DAVIS, Director, Outagamie County
Department of Health and Human Services, in her
official and individual capacities;

THOMAS NELSON, County Executive, Outagamie
County, in his official and individual capacities;

and

OUTAGAMIE COUNTY.

        Defendants.

Case No.

---

## COMPLAINT

---

### I.    <u>INTRODUCTION</u>

1.    Plaintiff Disability Rights Wisconsin, Inc. (hereafter DRW) brings this action challenging the defendants' refusal to acknowledge its authority under the Protection and Advocacy for individuals with Developmental Disabilities requirement of the Developmental Disabilities Assistance and Bill of Rights Act of 2000, (hereafter PADD Act), 42 U.S.C. § 15001 *et seq*, and the Protection and Advocacy Individual Rights Act (hereafter PAIR Act) 29 U.S.C. § 794e, and to

1

provide access to documents relating to an investigation into the death of J. B., as requested pursuant to those authorities.

2.     DRW is the protection and advocacy system (hereafter P & A) for the state of Wisconsin. According to the PADD and PAIR Acts, DRW is authorized, as one of its responsibilities as the P & A for Wisconsin, to conduct investigations of possible abuse, neglect, injury or death of individuals with developmental and other disabilities. This investigatory authority is triggered when DRW determines there is probable cause to believe that an individual with developmental or other disability may have been subject to abuse, neglect, injury or death. When conducting investigations into deaths of individuals with developmental or other disability, the PADD and PAIR Acts empower DRW to have access to all records of that individual as well as reports prepared by any agencies or staff persons charged with investigating reports of incidents of abuse, neglect, injury or death.

3.     In July of 2016 DRW became aware that a 14-year-old girl J. B. with a severe disability was planning to end her own life by declining medical treatment and entering a hospice facility. In August of 2016 DRW requested that the appropriate county children's protective services agency conduct an investigation into what appeared to be the planned suicide of J. B. In September of 2016, DRW learned that J. B. had died while an inpatient at a hospice facility. In October of 2016 DRW received a complaint from J. B.'s biological father that J. B. had died as a result of neglect.

4.     In October of 2016 DRW began an investigation into the death of J. B. by requesting, among other information, copies of any child protective services investigation completed by the Outagamie County Department of Health and Human Services. DRW's requests were ignored by defendant Melissa Blom. DRW then requested the intervention of the Outagamie County Corporation Counsel's office. That request was initially ignored as well. Ultimately, however, Corporation Counsel Joseph Guidote denied DRW's request for copies of the information. This action follows.

2

5.     DRW's ability to complete a thorough, effective and timely investigation of the death of J. B. has been substantially impaired and delayed by the defendants' refusal to produce the requested records.

6.     Defendants' refusal to produce the records constitutes a violation of state and federal law, including as stated below.

## I.     JURISDICTION AND VENUE

7.     This action is authorized by 28 U.S.C. §§ 2201-02, 29 U.S.C § 794e, 42 U.S.C. § 15043(a)(2)(A)(i) and 42 U.S.C. § 1983.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3).

8.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).  All Defendants, upon information and belief, reside in this district, are employed by Outagamie County, a county located wholly within this district, and J. B. died in a facility located in this district.

## II.     STATUTORY ENTITLEMENT

9.     The findings and purposes of the United States Congress, in passing the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15001 *et seq*, include, as set forth in 42 U.S.C. § 15001(a)(5),

individuals with developmental disabilities are at greater risk than the general population of abuse, neglect, financial and sexual exploitation, and the violation of their legal and human rights;

3

10.     Congress's purpose in creating the protection and advocacy system for people with developmental disabilities was "to protect the legal and human rights of individuals with developmental disabilities." 42 U.S.C. § 15041(b)(2).

11.     Congress specified the investigatory authority of the protection and advocacy system in 42 U.S.C. § 15043(a):

> (1) the State shall have in effect a system to protect and advocate the rights of individuals with developmental disabilities;
>
> (2) such system shall--
>              …
> (B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
>              …
> (I) have access to all records of--
>
>> (i)     any individual with a developmental disability who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
>>
>> (ii)    any individual with a developmental disability, in a situation in which--
>>
>>> (I) the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;
>>>
>>> (II) the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and
>>>
>>> (III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect; and
>>
>> (iii) any individual with a developmental disability, in a situation in which--
>>
>>> (I) the individual has a legal guardian, conservator, or other legal representative;
>>>
>>> (II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring

4

or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;

(III) such representative has been contacted by such system, upon receipt of the name and address of such representative;

(IV) such system has offered assistance to such representative to resolve the situation; and

(V) such representative has failed or refused to act on behalf of the individual;

12.     Per 42 U.S.C. § 15043(c), records to which the P &A is granted access include**:**

(1)     a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities;

(2)     a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and

(3)     a discharge planning record.

13.     Per 29 U.S.C. § 794e(f) the P & A has the same access to records of people with

disabilities as it has to the records of people with developmental disabilities:

(f) Application

In order to receive assistance under this section, an eligible system shall submit an application to the Commissioner, at such time, in such form and manner, and containing such information and assurances as the Commissioner determines necessary to meet the requirements of this section, including assurances that the eligible system will—

(1) have in effect a system to protect and advocate the rights of individuals with disabilities

(2)  have the same general authorities, including the authority to access records and program income, as are set forth in subtitle C of title I of the Developmental Disabilities Assistance and Bill of Rights Act of 2000;

5

14.     Federal regulations implementing the PADD Act and applicable to the PAIR Act,

further specify P & A access to records as set forth in 45 C.F.R. § 1326(b)(2):

> 2) Reports prepared by a Federal, State or local governmental agency, or a private organization charged with investigating incidents of abuse or neglect, injury or death. The organizations whose reports are subject to this requirement include, but are not limited to, agencies in the foster care systems, developmental disabilities systems, prison and jail systems, public and private educational systems, emergency shelters, criminal and civil law enforcement agencies such as police departments, agencies overseeing juvenile justice facilities, juvenile detention facilities, all pre– and post–adjudication juvenile facilities, State and Federal licensing and certification agencies, and private accreditation organizations such as the Joint Commission on the Accreditation of Health Care Organizations or by medical care evaluation or peer review committees, regardless of whether they are protected by federal or state law. The reports subject to this requirement describe any or all of the following:

> (i)     The incidents of abuse, neglect, injury, and/or death;

> (ii)    The steps taken to investigate the incidents;

> (iii)   Reports and records, including personnel records, prepared or maintained by the service provider in connection with such reports of incidents; or,

> (iv)    Supporting information that was relied upon in creating a report including all information and records that describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings;

15.     Federal regulations implementing the PADD Act further define "Legal guardian,

Conservator and Legal representative" as set forth in 45 C.F.R. § 1326(b)(2):

> Legal guardian, Conservator, and Legal representative. The terms "legal guardian," "conservator," and "legal representative" all mean a parent of a minor, unless the State has appointed another legal guardian under applicable State law, or an individual appointed and regularly reviewed by a State court or agency empowered under State law to appoint and review such officers, and having authority to make all decisions on behalf of individuals with developmental disabilities. It does not include persons acting only as a representative payee, persons acting only to handle financial payments, executors and administrators of estates, attorneys or other persons acting on behalf of an individual with developmental disabilities only in individual legal matters, or officials or their designees responsible for the provision of services, supports, and other assistance to an individual with developmental disabilities.

6

16.     The Wisconsin statute authorizing P & A access to records allows the P & A to access records without first consulting a parent when "there is otherwise probable cause to believe that the patient has been subject to abuse or neglect by a parent or guardian." Wis. Stat. § 51.30(4)(b)18.e.

### III.     PARTIES

17.     Plaintiff DRW (formerly known as the Wisconsin Coalition for Advocacy) is a Wisconsin non-stock corporation that has been designated by the State of Wisconsin to protect and advocate on behalf of people with disabilities pursuant to federal law. Because the State of Wisconsin receives federal funds under the Developmental Disabilities Assistance Bill of Rights Act, §§ 42 U.S.C .15001 *et seq*, it is required to "have in effect a system to protect and advocate the rights of individuals with developmental disabilities[.]" 42 U.S.C. § 15043(a).   Under 29 U.S.C. § 794e, each state is also required to have in place a system "to protect the legal and human rights of individuals with disabilities" who "are ineligible for protection and advocacy programs [under PADD] because the individuals do not have a developmental disability."   DRW was designated by Gov. Anthony S. Earl's Executive Order #19 in 1983 to be that system. DRW has a mandate and authority to investigate abuse and neglect of people with disabilities in the State of Wisconsin under these laws. DRW spends considerable time and resources investigating abuse and neglect at various institutions providing care and treatment to people with developmental disabilities as well as of incidents of such abuse or neglect that occur in community-based settings.

18.     Defendant Melissa Blom is the Manager of the Children, Youth and Families Division (hereafter CYFD) of the Outagamie County Department of Health and Human Services.  According to "The Guide to the Outagamie County Department of Health and Human Services," available at the Outagamie County website at:

http://www.outagamie.org/modules/showdocument.aspx?documentid=126, the CYFD "Receives concerns regarding the welfare of children and assesses allegations of abuse/neglect of children. Makes safety determinations regarding children and offers information and resources to families. Makes referrals to Juvenile Court or other services when appropriate." See "Guide" at p. 26. Upon information and belief, Melissa Blom resides within the jurisdiction of this Court.

19. Defendant Rosemary Davis is the Director of the Outagamie County Department of Health and Human Services and has authority over decisions made by the CYFD regarding child welfare, compliance with federal law and release of information and records. Wis. Stats. § 48.56. Upon information and belief, Rosemary Davis resides within the jurisdiction of this Court.

20. Defendant Thomas Nelson is the County Executive for Outagamie County and has authority over the Outagamie County Department of Health and Human Services regarding compliance with federal law and release of information and records. Wis. Stats. § 59.17(2). Upon information and belief, Thomas Nelson resides within the jurisdiction of this Court.

21. Defendant Outagamie County is a governmental body corporate organized under the laws of the State of Wisconsin, Wis. Stats. Ch. 59. The Outagamie County Department of Health and Human Services is an agency created and operated by Outagamie County. Its principal office location is in Outagamie County at 401 South Elm Street, Appleton, Wisconsin.

## IV. FACTS

22. In July of 2016 DRW became aware that J. B., a fourteen-year-old girl, with a condition known as spinal muscular atrophy had been the subject of a prom-like event known as "J.'s Last Dance." According to media reports this was billed as J. B.'s "last dance" because of her expressed intent to seek hospice services following the prom. It was her stated intent to discontinue her "ventilator" and eventually die from, presumably, respiratory failure.

8

23.     In U-Tube videos of J. B. (aired following the "last dance" which occurred on July 27, 2016) she was articulate, smiling and fully engaged in her environment and with the people around her. She showed no evidence of being dependent on a ventilator. Other videos indicated that her respiration assistance was in the form of a BiPAP machine, a far less intrusive intervention than a ventilator.

24.     According to media reports and U-Tube videos, J. B. had planned on transferring to hospice care in early August (immediately following the "last dance") but then indicated she was postponing the transfer until September because that was when her friends would return to school.

25.      According to media reports, J. B.'s mother, Jennifer B., was a nurse and was supportive of her daughter's decision to use hospice services as a means of ending her life. Her mother appeared to be taking no action to stop, what was, for all practical purposes, her daughter's suicide.

26.     Wisconsin has not adopted the so-called "mature minor doctrine" which would have allowed J. B. to individually determine whether or not she wanted to accept or decline life-sustaining medical treatment. In the absence of the "mature minor doctrine," decisions relating to J. B.'s health were the legal responsibility of her parents.

27.     In the Wisconsin Children's Code "neglect" is defined as the "failure, refusal or inability on the part of a caregiver, for reasons other than poverty, to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child." Wis. Stats. § 48.02(12g).

28.     On August 17, 2016, based on those media reports and applicable law, DRW contacted three county human services departments (Outagamie, Winnebago, and Calumet counties) with children's protective services responsibility and requested that any or all of them investigate J.

9

B.'s situation to determine whether what was happening would be neglect as defined by the Wisconsin Children's Code.  A copy of a letter composed by Disabled Parents Rights was attached to DRW's letter. The letter was sent to three counties because the City of Appleton straddles three counties and it was unclear which county was J. B.'s county of residency.  DRW also sent a copy of the letter to Eloise Anderson, Secretary of the Wisconsin Department of Children and Families (hereafter DCF). A copy of DRW's August 17, 2016 letter is incorporated and attached as Exhibit A.

29.      DRW received no response to this letter from any of the county CPS agencies.

30.      By letter to DRW dated August 29, 2016, John Touhy, Director of the Bureau of Regional Operations for DCF, acknowledged receipt of DRW's August 17, 2016 letter and indicated that the letter from Disabled Parents Rights had been previously received and "forwarded by DCF to Outagamie County as a CPS report."  A copy of DCF's letter of August 29, 2016 is incorporated and attached as Exhibit B.

31.      On September 22, 2016 DRW received notice that J. B. had died in a hospice facility earlier on September 22, 2016.

32.      On October 14, 2016 DRW received a complaint of neglect in the death of J. B. from her biological father, Lamar Jones.

33.      On October 14, 2016, DRW faxed a letter to Melissa Blom, the Manager of the Children, Youth and Families Division of the Outagamie County Department of Health and Human Services requesting a complete copy of any investigative report her division conducted on J. B., together with copies of any supporting information gathered in the course of that investigation, including investigator notes and interview transcripts, recordings or summaries and, to the extent not covered by the foregoing request, all documents that fell within the purview of 45 C.F.R. § 1386.25(b).  The letter was accompanied by a release of information signed by Lamar

Jones. A copy of DRW's letter of October 14, 2016 to Ms. Blom is incorporated and attached as Exhibit C.

34.     Similar letters were sent to the child protective services agencies in Calumet, Winnebago and Sheboygan Counties.

35.     Ms. Blom did not respond to DRW's letter of October 14, 2016.

36.     DRW received responses from the other three CPS agencies.

37.     On November 8, 2016, DRW faxed a letter to defendant Blom and repeated its request for records. In that letter DRW requested that defendant Blom contact DRW or have the Corporation Counsel for the county contact DRW. A copy of the November 8, 2016 letter (without attachments) to Ms. Blom is incorporated and attached as Exhibit D.

38.     Ms. Blom did not respond to the letter of November 8, 2016.

39.     On November 14, 2016, DRW faxed a letter to Joseph Guidote, Corporation Counsel for Outagamie County, and repeated its request to access the information requested in the letters to Blom of October 14, 2016 and November 8, 2016. The November 14, 2016 letter had copies of DRW's earlier correspondence to defendant Blom attached to it (Exhibits C and D). A copy of the November 14, 2016 letter (without attachments) to Mr. Guidote is incorporated and attached as Exhibit E.

40.     On or about November 15 or 16, 2016, DRW received a telephone call from a staff person with the Outagamie County Corporation Counsel office acknowledging receipt of the November 14, 2016 letter and indicating that Corporation Counsel Guidote was out of the office for several days and would respond upon his return to the office.

41.     Corporation Counsel Guidote never responded to the letter of November 14, 2016.

11

42.    On November 30, 2016, DRW Faxed another letter to Corporation Counsel Guidote again requesting that the requested records be produced. A copy of the November 30, 2016 letter to Mr. Guidote is incorporated and attached as Exhibit F.

43.    The letter of November 30, 2016 was never responded to.

44.    On December 19, 2016, DRW faxed another letter Corporation Counsel Guidote again requesting that the requested records be produced. DRW also told Mr. Guidote that he had until the close of business on Friday December 21, 2016 to respond or DRW would assume, based on his failure to respond to its earlier letters, that he was not representing Outagamie County in the matter, and would contact Outagamie County Executive Thomas Nelson directly. A copy of the December 19, 2016 letter to Mr. Guidote is incorporated and attached as Exhibit G.

45.    On December 21, 2016, DRW received a faxed letter from Mr. Guidote in which he stated that he would respond to DRW's request by January 6, 2017. A copy of the December 21, 2016 letter from Joseph Guidote is incorporated and attached as Exhibit H.

46.    On January 11, 2017 DRW received via U.S. Mail a letter dated January 6, 2017 and postmarked January 9, 2017 from Mr. Guidote in which he informed DRW that he was denying its request for records. In that letter he wrote, in part:

> Wis. Stat. 48.981(7) (2015-2016) requires us to keep child protection records confidential unless there is an enumerated exception. There does not appear to be an exception under the statute that would allow disclosure in this instance. While I respect the authority of Disability Rights Wisconsin to gather evidence related to treatment records, Outagamie County never provided treatment or rehabilitation services to J. B.. Thus, the county does not have any treatment records in its possession that are available to your organization under Wis. Stat. § 51.30(4)(b)(18).[sic]

A copy of the January 6, 2017 letter from Joseph Guidote is incorporated and attached as Exhibit I.

47.    On January 12, 2017, DRW faxed a letter to Mr. Guidote responding to and specifically refuting the authorities cited in his January 6, 2017 letter. DRW again requested the

records and informed Mr. Guidote that it was commencing preparation of a lawsuit to enforce its access right and attached a copy of this Court's ruling in *Wisconsin Coalition for Advocacy v. Busby*, which held that WCA (DRW's former name) was entitled to have access to the Winnebago County Coroner's report on the death of a person with a disability stemming from a mental illness. The legal authorities underlying that decision are the same as relied upon in this case.

48.     The January 12, 2017 letter informed Mr. Guidote that production of the records before the filing of a lawsuit could prevent Outagamie County from incurring liability for its denial. A copy of the January 12, 2017 letter is incorporated and attached as Exhibit J.

49.     DRW has received no further correspondence from Mr. Guidote or the defendants.

50.     On February 6, 2017 DRW faxed a copy of this complaint to Joseph Guidote and informed him that the complaint would be filed after 24 hours had elapsed unless the requested documents were produced. A copy of the February 6, 2017 letter to Mr. Guidote is incorporated and attached as Exhibit K.

51.     Mr. Guidote's office responded to that letter by informing DRW that Mr. Guidote was unavailable until 12:00 pm on February 7, 2017.

52.     Later on February 6, 2017 DRW faxed a letter to Mr. Guidote informing him that DRW would delay filing the complaint until 9:00 am on February 8, 2017. A copy of the second February 6, 2017 letter to Mr. Guidote is incorporated and attached as Exhibit L.

53.     Mr. Guidote did not respond to that letter.

54.     Other entities, including the facility in which J. B. died, have responded to our requests for information either by producing the requested records or, in the case of other county child protective service agencies, by confirming that they had conducted no investigation and had no reports or records to produce.

13

55. DRW has determined there is probable cause to believe that neglect was a factor in J. B.'s death.

56. DRW was asked by J. B.'s biological father to investigate his daughter's death.

57. DRW's ability to conduct its investigation into the death of J. B. has been significantly hampered by the defendants' denial of access to the records and reports in their possession.

58. DRW has been required to devote staff time and effort to repeated attempts to obtain access, thereby incurring expense and damages which would not have been incurred if defendant had complied with DRW's statutory access rights. DRW has thereby lost the opportunity to serve other clients and to address protection and advocacy services to other issues, further affecting DRW's allocation of staff resources and causing expense and damages to DRW which would not have been incurred if defendant had complied with DRW's statutory access rights.

## V.     COUNT ONE

### Claim for Relief Under 42 U.S.C. § 15043

59. Plaintiff realleges the allegations contained in paragraphs 1-57 of this Complaint as if fully set forth herein.

60. J. B. was an "individual with a developmental disability" eligible for DRW's services, pursuant to 42 U.S.C. §§ 15002(8) and 15043(a)(2)I.

61. J. B. died in a hospice facility which is a "location at which services, supports, or other assistance is provided to individuals with developmental disabilities." 42 U.S.C. § 15043(c)(1).

62. CYFD is an agency "charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location." 42 U.S.C. § 15043(c)(2).

14

63. Any report created by, and supporting information relied upon by, CYFD are "individual records" to which DRW is entitled to access under 42 U.S.C. § 15043(a)(2) and (c) and 45 C.FR. § 1326.25(b).

64. Because DRW was investigating a death, it was entitled to receive these individual records within 24 hours of requesting them. 42 U.S.C. § 15043(a)(2)(J)(ii) and 45 C.FR. § 1326.25(c)(1).

65. Defendants initially ignored DRW's multiple requests for these records and ultimately denied DRW's request.

66. Defendants denial of DRW's authority to promptly access J. B.'s records under the PADD Act and related regulations prevents DRW from fully performing its statutory duty to investigate incidents of suspected abuse, neglect or death of individuals with developmental disabilities.

67. Plaintiff has no adequate remedy at law.

68. Defendant's actions and inactions in refusing to promptly provide DRW with all the records it has requested relating to the investigation of the death of J. B. violate DRW's statutory rights under the PADD Act, 42 U.S.C. § 15043.

## VI.    COUNT TWO

### Claim for relief under 29 U.S.C. § 794e

69. Plaintiff realleges the allegations contained in paragraphs 1-68 of this Complaint as if fully set forth herein.

70. If J.B. was not an individual with a developmental disability, she was an individual with a disability under 29 U.S.C. § 794e.

15

71. DRW is entitled to the same access to J. B.'s records under 29 U.S.C. § 794e as it is under 42 U.S.C. § 15043.

72. Defendants denial of DRW's authority to promptly access J. B.'s records under the PAIR Act and related regulations prevents DRW from fully performing its statutory duty to investigate incidents of suspected abuse, neglect or death of individuals with disabilities.

73. Plaintiff has no adequate remedy at law.

74. Defendants' actions and inactions in refusing to promptly provide DRW with all the records it has requested relating to the investigation of the death of J. B. violate DRW's statutory rights under the PAIR Act, 29 U.S.C. § 794e.

VII.  COUNT THREE

Claim for relief under 42 U.S.C. § 1983 against defendant Blom

75. Plaintiff realleges the allegations contained in paragraphs 1-74 of this Complaint as if fully set forth herein.

76. Count two is brought against defendant Melissa Blom in her official capacity as Manager of the Outagamie County Department of Health and Human Services CYFD and in her individual capacity.

77. Defendant's actions, inactions, practices, policies and procedures, as set forth herein, violate DRW's statutory rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

78. Defendant's actions, inactions, practices, policies and procedures, as asserted herein, were undertaken under color of law.

79. Defendant's actions, inactions, practices, policies and procedures, as asserted herein, in refusing to comply with DRW's statutory rights were undertaken knowingly, intentionally or with

deliberate indifference and willful and callous disregard of DRW's rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

80.     Due to the violation of DRW's statutory rights by defendant's actions, inactions, practices, policies and procedures, as asserted herein, DRW has suffered immediate and irreparable harm.

81.     Due to defendant's refusal to promptly allow access to the requested records, DRW has been required to devote staff time and effort to repeated attempts to obtain access, thereby incurring expense and damages which would not have been incurred if defendant had complied with DRW's statutory access rights.  DRW has thereby lost the opportunity to serve other clients and to devote protection and advocacy resources and services to other issues, further affecting DRW's allocation of staff resources and causing expense and damages to DRW which would not have been incurred if defendant had complied with DRW's statutory access rights.

VIII.     COUNT FOUR

Claim for relief under 42 U.S.C. § 1983 against defendant Davis

82.     Plaintiff realleges the allegations contained in paragraphs 1-81 of this Complaint as if fully set forth herein.

83.     Count three is brought against defendant Rosemary Davis in her official capacity as Director of the Outagamie County Department of Health and Human Services and in her indivdual capacity.

84.     Defendant Davis has ultimate authority over whether divisions of the Outagamie County DHHS respond to requests for information by the P & A.

85.     Defendant's actions, inactions, practices, policies and procedures, as set forth herein, violate DRW's statutory rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

86.     Defendant's actions, inactions, practices, policies and procedures, as asserted herein, were undertaken under color of law.

87.     Defendant's actions, inactions, practices, policies and procedures, as asserted herein, in refusing to comply with DRW's statutory rights were undertaken knowingly, intentionally or with deliberate indifference and willful and callous disregard of DRW's rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

88.     Due to the violation of DRW's statutory rights by defendant's actions, inactions, practices, policies and procedures, as asserted herein, DRW has suffered immediate and irreparable harm.

89.     Due to defendant's refusal to promptly allow access to the requested records, DRW has been required to devote staff time and effort to repeated attempts to obtain access, thereby incurring expense and damages which would not have been incurred if defendant had complied with DRW's statutory access rights.  DRW has thereby lost the opportunity to serve other clients and to devote protection and advocacy resources and services to other issues, further affecting DRW's allocation of staff resources and causing expense and damages to DRW which would not have been incurred if defendant had complied with DRW's statutory access rights.

## IX.     COUNT FIVE

### Claim for relief under 42 U.S.C. § 1983 against defendant Nelson

90.     Plaintiff realleges the allegations contained in paragraphs 1-89 of this Complaint as if fully set forth herein.

18

91.     Count three is brought against defendant Thomas Nelson in his official capacity as County Executive of Outagamie County and in his individual capacity.

92.     Defendant Nelson has ultimate authority over whether departments of Outagamie County government respond to requests for information by the P & A made pursuant to Federal law.

93.     Defendant's actions, inactions, practices, policies and procedures, as set forth herein, violate DRW's statutory rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

94.     Defendant's actions, inactions, practices, policies and procedures, as asserted herein, were undertaken under color of law.

95.     Defendant's actions, inactions, practices, policies and procedures, as asserted herein, in refusing to comply with DRW's statutory rights were undertaken knowingly, intentionally or with deliberate indifference and willful and callous disregard of DRW's rights under the PADD Act, 42 U.S.C. § 15043 or the PAIR Act, 29 U.S.C. § 794e.

96.     Due to the violation of DRW's statutory rights by defendant's actions, inactions, practices, policies and procedures, as asserted herein, DRW has suffered immediate and irreparable harm.

97.     Due to defendant's refusal to promptly allow access to the requested records, DRW has been required to devote staff time and effort to repeated attempts to obtain access, thereby incurring expense and damages which would not have been incurred if defendant had complied with DRW's statutory access rights.  DRW has thereby lost the opportunity to serve other clients and to devote protection and advocacy resources and services to other issues, further affecting DRW's allocation of staff resources and causing expense and damages to DRW which would not have been incurred if defendant had complied with DRW's statutory access rights.

19

## X.     PRAYER FOR RELIEF

WHEREFORE, plaintiff requests:

(a)     that the Court exercise jurisdiction over this action;

(b)     that the Court declare that the plaintiff has the right to have access to the requested records under either the PADD or PAIR Acts;

(c)     that the Court find that the defendant's actions or inactions violate the PADD or PAIR Acts;

(d)     that the Court enjoin the defendants, their successors and any other person acting in concert with a defendant or the successor of defendant from

      i.     Failing to provide to DRW any report, document, or other record relating to J. B., including those related to her death and any investigation thereof; or relating to any other person who is DRW's client or whose records DRW is authorized to have access to under the PADD Act, PAIR Act or other federal law; and

      ii.     Otherwise interfering with any investigation of abuse and neglect authorized under the PADD Act, PAIR Act or other federal law.

(e)     That the Court enter a judgment, pursuant to 42 U.S.C § 1983 and 42 U.S.C. § 1988(b), awarding attorneys fees, costs and expenses incurred by or on behalf of the plaintiff in prosecution of this action;

(f)     That the Court enter a judgment, pursuant to 42 U.S.C. § 1983, awarding DRW damages in the amount of $10,000; and

(g)     That the Court issue such other relief as may be just, equitable and appropriate.

Dated this 8th day of February, 2017.

s/ Mitchell Hagopian
_____

Mitchell Hagopian
Wisconsin Bar No. 1000181

Disability Rights Wisconsin, Inc.
131 W. Wilson St.
Suite 700
Madison. WI 53703

(608) 267-0214 (phone)
(608) 267-0368 (fax)
mitchh@drwi.org

Case 1:17-cv-00183-WCG   Filed 02/08/17   Page 21 of 21   Document 1